# EXHIBIT 1

Eric C. Briggs – The Salter Group, LLC

Mr. Briggs is a Founding Principal of The Salter Group, LLC based in the Los Angeles Office where he co-manages the firm's overall practice and project management efforts. Mr. Briggs has extensive experience across a broad range of financial advisory roles including fairness opinions, intangible asset valuations, litigation support and strategic planning.

Since the formation of The Salter Group, Mr. Briggs has directly managed over 1000 engagements for a broad array of domestic and international clients including Goldman Sachs, Sony, Cerberus Capital, Fortress Capital, EMI Group plc, Citigroup and KKR. Further, Mr. Briggs has advised clients across multiple industry sectors including entertainment and media, construction, technology and life sciences.

During 2009, Mr. Briggs joined the faculty in the Finance and Business Economics Department in the Marshall School of Business at USC. Mr. Briggs teaches Corporate Finance and Investment Valuation whereby coursework ranges from capital budgeting and business forecasting to security valuation.

Mr. Briggs was previously with Houlihan Lokey Howard & Zukin in Financial Advisory Services and has served as a Research Associate and Teaching Associate at the Anderson School at UCLA.

In addition, Mr. Briggs has lectured at the Anderson School at UCLA, Brown University and the Marshall School of Business at USC. Mr. Briggs has authored several white papers on topics including income mobility, the impact of taxes on valuation and equity holding behavior.

Mr. Briggs received his MBA in Applied Finance from the Anderson School at UCLA and holds a B.S. with Honors in Economics from Brown University. Mr. Briggs has been a member of Omicron Delta Epsilon, American Statistical Association and the Young Entrepreneurs' Organization (YEO).

Exhibit 1, Page 4

# EXHIBIT 2

# THE SALTER GROUP

December 7, 2009

Daniel A. Rozansky, Esq.
Eric F. Harbert, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East, Suite 1600
Los Angeles, CA 90067

Dear Sirs:

At the request of Stroock & Stroock & Lavan LLP ("Stroock" or "you"), on behalf of your client Aramid Entertainment Fund Limited ("Aramid" or the "Client"), The Salter Group, LLC ("The Salter Group") has analyzed certain financial information regarding the two films, *Love Ranch* and *Five Dollars a Day* (individually a "Film", and collectively, the "Films"), as detailed herein and submits this letter on our findings.

We understand that the Films were financed by loans made in part by Aramid to Cerulean Productions, LLC and Bontempo Holdings, LLC (collectively, the "Borrower"). The purpose of this analysis was to express an opinion (the "Opinion") on the fair market value as of December 7, 2009 ("Valuation Date"), of the Films, individually, on a controlling interest basis. In addition, The Salter Group performed certain other analyses in order to develop an alternative valuation indication. All indications are intended to assist Stroock in advising the Client in connection with certain legal proceedings between the Client and the Borrower.

**Limiting Factors and Other Assumptions:**

In accordance with recognized professional ethics, The Salter Group's fee for this engagement is not contingent upon the results set forth in this written Opinion. Further, neither The Salter Group nor any of its employees have a present or intended financial interest in the Films, the Client or Stroock.

All valuation methodologies that estimate the worth of a film as a static asset are predicated on numerous assumptions pertaining to prospective economic and operating conditions. This Opinion is necessarily based on business, general economic, market and other conditions as they exist and can be reasonably evaluated by The Salter Group as of the date hereof. Subsequent events that could affect the conclusions set forth in this Opinion include adverse changes in industry performance or market conditions and changes to the financial condition and results of the Films. The Salter Group does not provide assurances or guarantees on the achievability of any forecasts, projections or other forward-looking matters. Unanticipated events and circumstances may occur and actual results may vary from those assumed. The variations may be material.

Notwithstanding the foregoing, as of the date of this Opinion, the domestic and global financial markets face certain significant challenges and it remains unknown whether the actions of various governments and global banking institutions will be successful in providing greater stability to the financial markets (and if so, what the timing and sequencing of corresponding events would be). While such factors have been considered to a certain degree as part of our analyses, we have assumed that the general economic and other related conditions (including their impact on the Films) will become less uncertain in the near future. As such, our conclusions are qualified by, and remain subject to, the foregoing assumptions and related valuation methodologies.

www.saltergroup.com
1840 Century Park East, Suite 400
Los Angeles, California 90067
Tel: 310.552.3774   Fax: 310.552.3781
Los Angeles        New York  San Francisco        Paris        Tokyo

Exhibit 2, Page 5

Stroock & Stroock & Lavan LLP
December 7, 2009

The conclusions set forth in this Opinion are based on methods and techniques that The Salter Group considered appropriate under the circumstances, and represent the opinion of The Salter Group based upon information requested from and furnished by Aramid and publicly available sources. The Salter Group has relied upon Aramid's (i) representations that the information provided by it, or on its behalf, is accurate and complete in all material requests to the best of its knowledge, and (ii) agreement to notify us if it learns of any material misstatement in, or material omission from, any information previously delivered to The Salter Group. While all public information (including industry and statistical information) was obtained from sources we believe are reliable, The Salter Group makes no representation as to the accuracy or completeness thereof, and we have relied upon such public information and all information requested from and provided by, or on behalf of, Aramid without independent verification.

As The Salter Group is not a law firm or accounting firm, The Salter Group has not reviewed or interpreted certain contracts underlying the rights availabilities, chain-of-title or other distribution structure elements associated with the Films. The Salter Group has relied upon information requested from and provided by Aramid regarding such elements and relevant associated calculations.

The Salter Group is under no obligation to update, revise or reaffirm this Opinion after the date hereof or prior to the closing of any transaction. Further, The Salter Group is not required to render any future services regarding the subject matter of this Opinion, except to the extent expressly set forth in our engagement letter.

This Opinion is intended for the sole use of Stroock and Aramid, solely for the purpose stated, and may not be relied upon by any other person or for any other purpose without The Salter Group's prior written consent.

The opinions set forth in this Opinion are not intended by The Salter Group, and should not be construed, to be investment advice in any manner whatsoever. Furthermore, no opinion, counsel or interpretation is intended in matters that require legal, accounting, tax, insurance or other appropriate professional advice. Such opinions, counsel or interpretations should be obtained by any recipient of this Opinion from the appropriate professional sources.

Any recipient of this Opinion (other than certain persons affiliated with the Client or Stroock, as specified in our client engagement letter) who has not signed and returned to The Salter Group its customary "Schedule A" access letter agreement is not authorized to review or retain this document. Any such unauthorized person shall be deemed to have acknowledged and agreed to the following additional terms, conditions and limitations: (i) this Opinion was prepared in accordance with instructions provided by, and for the exclusive use of, our client, (ii) this Opinion may not include all procedures deemed necessary or desirable for the purposes of any unauthorized recipient, (iii) neither The Salter Group nor any of its owners, officers or employees owe any duty or responsibility to any unauthorized recipient, and (iv) this Opinion may not be quoted, referenced or distributed, in whole or in part, without the prior written consent of The Salter Group.

This Opinion should be read and analyzed in its entirety.

**Summary of Findings:**

Based upon the investigations, premises, provisos, and analyses outlined below, and subject to the Limiting Factors and Other Assumptions, it is our Opinion that, as of December 7, 2009, the fair market value basis indication associated with the Films on a controlling interest basis is portrayed in the table below, as further detailed in Exhibit A-1. Further, portrayed below is an additional valuation indication scenario, also detailed in Exhibit A-1:

Exhibit 2, Page 6

Stroock & Stroock & Lavan LLP
December 7, 2009

**Valuation Summary**

| | | | Reference |
|---|---|---|---|
| **FMV Including Additional Production Completion Costs - Love Ranch** | | | |
| Love Ranch | 2,249.8 | 2,300.5 | Exhibit A-2 |
| Less: Additional Production Completion Costs (2) | (627.7) | (627.7) | |
| **Total FMV Indication - Love Ranch** | **1,622.1** | **1,672.8** | |
| | | | |
| | | | |
| | | | |
| **Total FMV Indication - Love Ranch** | 1,622.1 | 1,672.8 | |
| Add: Uncollected Historical Sales (4) | 340.6 | 340.6 | Exhibit B-1 |
| **Total - Love Ranch** | **1,962.7** | **2,013.4** | |

*Footnotes:*

(1) It is the understanding of The Salter Group that, in the case of a foreclosure, a lender would not be obligated to pay certain taxes arising from the cash receipts of the Films, as such cash receipts would represent a recovery of principal. As such, The Salter Group has developed the the valuation indications, detailed above, on a pre-tax basis.

(2) The Salter Group noted that, based upon information requested from and provided by Arasad in the file 'LOVERANCHctrl091117.pdf', *Love Ranch* may potentially require additional funding to complete production. Notwithstanding the foregoing, for purposes of this analysis, The Salter Group assumed that both Films were complete and available for licensing as of the Valuation Date. That said, the additional production costs associated with the completion of *Love Ranch* are portrayed in the Valuation Summary above.

(3)

(4)

Scenario 2 above, The Salter Group incorporated such amounts on a by-Film basis as an add-back to value, but adjusted such amounts downward in order to reflect certain risk factors associated with the collectability the historical sales amounts.

For purposes of developing

Best regards,

*The Salter Group, LLC*

THE SALTER GROUP, LLC

Attachment

-3-

Exhibit 2, Page 7

Stroock & Stroock & Lavan LLP
December 7, 2009

**Table of Contents:**

**1. Engagement Overview** .................................................................................................. 5
  **1.1 Background** ........................................................................................................... 5
  **1.2 Engagement Purpose and Scope** ....................................................................... 5
    *1.2.1 Key Definitions* ............................................................................................ 5
    *1.2.2 Due Diligence Overview* ............................................................................ 5
  **1.3 Summary of Findings** ........................................................................................ 6

**2. Film Overview** ............................................................................................................. 7

**3. Methodology Overview** .............................................................................................. 8
  **3.1 Representative Level Projections** ..................................................................... 8
    *3.1.1 Licensing Risk Factors/Risk-Adjusted License Fees* ................................. 10
    *3.1.2 Other Considerations* ................................................................................ 10
    *3.1.3 Administrative/Overhead Costs* ................................................................ 11
    *3.1.4 Calculation of Estimated Taxes* ............................................................... 11
    *3.1.5 Discount Rates* .......................................................................................... 11

**4. Limiting Factors and Other Assumptions** ............................................................. 13

Stroock & Stroock & Lavan LLP
120709

Exhibit 2, Page 8

Stroock & Stroock & Lavan LLP
December 7, 2009

## 1. Engagement Overview

### 1.1 Background

At the request of Stroock & Stroock & Lavan LLP ("Stroock" or "you"), on behalf of your client Aramid Entertainment Fund Limited ("Aramid" or the "Client"), The Salter Group, LLC ("The Salter Group") has analyzed certain financial information regarding the two films *Love Ranch* and *Five Dollars a Day* (individually a "Film", and collectively, the "Films") as detailed herein and submits this letter on our findings.

### 1.2 Engagement Purpose and Scope

We understand that the Films were financed by loans made in part by Aramid to Cerulean Productions, LLC and Bontempo Holdings, LLC (collectively, the "Borrower"). The purpose of this analysis was to express an opinion (the "Opinion") on the fair market value as of December 7, 2009 ("Valuation Date"), of the Films, individually, on a controlling interest basis. In addition, The Salter Group performed certain other analyses in order to develop an alternative valuation indication. All indications are intended to assist Stroock in advising the Client in connection with certain legal proceedings between the Client and the Borrower.

#### 1.2.1 Key Definitions

The term "fair market value," as used herein, is defined as "…the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of relevant facts."[1] For clarity, such definition is distinguished from a liquidation and/or 'fire sale' valuation indication.

The term "cycle," or "sale," as used herein, is defined as a period of time during which a title is exploited in a variety of media formats. The first cycle generally references the first ten to fifteen years of a film's economic life. Each subsequent cycle (e.g., second cycle, third cycle, etc.) references the subsequent periods of a film's economic life in five-year increments. With respect to the analysis conducted herein, The Salter Group noted that certain titles were sold for longer periods of time than traditional cycles.

The term "Gross Receipts," as used herein, is defined as the aggregate levels of licensing and/or distribution receipts as would be received without any form of deduction by a distributor.

The term "Net Receipts," as used herein, is defined as the Gross Receipts after the deduction of all relevant costs, which may potentially include, but are not limited to, distribution fees, distribution expenses, participations, residuals, other third party payments and any applicable advance recoupments.

It is the understanding of The Salter Group, upon which we are relying, any recipient of the Opinion will consult with and rely upon their own legal counsel with respect to the limitations and definitions set forth herein. No representation is made herein, or directly or indirectly by the Opinion, as to any legal matter or as to the sufficiency of said definitions for any purpose other than setting forth the scope of The Salter Group's Opinion.

#### 1.2.2 Due Diligence Overview

In connection with this Opinion, The Salter Group has made such reviews, analyses and inquiries as The Salter Group has deemed necessary and appropriate under the circumstances. Among other things, The Salter Group has:

    (i)    reviewed cast and summary information regarding the Films, requested from and provided by Aramid in the files 'Love Ranch - Cast & Summary.doc' and '$5 a Day - Cast & Summary.doc';

---

1 IRS Revenue Ruling 59-60

Stroock & Stroock & Lavan LLP
December 7, 2009

(ii)  reviewed by-territory license fee estimates for *Love Ranch*, requested from and provided by Aramid in the file 'Love Ranch sales and estimates.xls', prepared by Capitol Films as of August 10, 2007.  Further, The Salter Group reviewed by-territory license fee estimates for *Five Dollars a Day*, requested from and provided by Aramid in the file 'Sales Estimates as at 2.08.07.xls', prepared by Think Films as of August 2, 2007 and the file 'Collected Gross Receipts - 31.01.2009.pdf', prepared as of February 10, 2009 (individually and collectively, such estimates for the Films will be referred to herein as the "Producer Estimates");

(iii)  reviewed by-films production budget information for each of the Films, requested from and provided by Aramid in the files '$5 Budget.pdf' and 'Love Ranch - Budget.pdf', prepared as of October 17, 2007 and January 30, 2008 respectively;

(iv)  reviewed a completion budget schedule for *Love Ranch*, requested from and provided by Aramid in the file 'LOVERANCHcrd091117.pdf', prepared as at November 17, 2009;

(v)  reviewed by-title liability information, requested from and provided by Aramid in the files 'Outstanding Liabilities - Love Ranch.doc' and 'Outstanding Liabilities - $5 a Day.doc';

(vi)  reviewed by-title, by-territory distribution agreements (individually "D.A.") and notice of availability information (individually "N.O.A."), requested from and provided by Aramid;

(vii)  reviewed statements regarding the collection of Gross Receipts for *Five Dollars a Day*, requested from and provided by Aramid in the files 'Collected Gross Receipts - 31.01.2009.pdf' and 'Collection Statement no.2 - Five Dollars a Day.pdf', both prepared as of February 10, 2009;

(viii)  reviewed Image distribution agreement in the file '(51209224)_(1)_Image Entertainment Agreement (Five Dollar).PDF' dated August 6, 2007, regarding certain home entertainment and other ancillary distribution rights for *Five Dollars a Day*;

(ix)  reviewed certain rights availability information on a by-title, by-territory basis for the Films, as requested from and provided by Aramid;

(x)  spoken with industry experts regarding the economic potential for independent film content similar to the Films; and

(xi)  conducted such other interviews, studies, analyses and inquiries as we have deemed appropriate.

The Salter Group has not independently verified the accuracy and completeness of the information supplied to us with respect to the Films and does not assume any responsibility with respect to it.  The Salter Group has not made any physical inspection or independent appraisal of any of the properties or assets of the Films.

We have relied upon and assumed, without independent verification, that the financial information and license fee estimates provided to us have been reasonably prepared and that there does not exist any undisclosed information regarding the Films that would materially affect our findings herein (notably between the date of the most recent financial information made available to us and the Valuation Date).

**1.3 Summary of Findings**

Based upon the investigations, premises, provisos, and analyses outlined below, and subject to the Limiting Factors and Other Assumptions, it is our Opinion that, as of December 7, 2009, the fair market value basis indication associated with the Films on a controlling interest basis is portrayed in the table below, as further detailed in Exhibit A-1.  Further, portrayed below is an additional valuation indication scenario, also detailed in Exhibit A-1:

-6-

Stroock & Stroock & Lavan LLP
December 7, 2009



## 2. Film Overview

The following reflects an overview of the Films:

(i)    *Love Ranch:*  tells the story of a couple whose faithfulness is tested with deadly results after starting Nevada's first legal brothel.  The Film includes such key cast members as Joe Pesci, Helen Mirren and Gina Gershon.  Based upon information requested from and provided by Aramid, the Film's production budget was approximately $21MM; and

(ii)   *Five Dollars a Day:*  tells the story of the conservative son of a thrifty con man, who begrudgingly joins his father on the road, after years of separation.  The Film includes such key cast members as Christopher Walken, Sharon Stone and Amanda Peet.  Based upon information requested from and provided by Aramid, the Film's production budget was approximately $11.5MM.

Exhibit 2, Page 11

Stroock & Stroock & Lavan LLP
December 7, 2009

### 3. Methodology Overview

In our analysis of the Films, The Salter Group has taken into consideration its prospective income- and cash-generating capability.  Typically, an investor contemplating an investment in a film with income- and cash-generating capability similar to the Films will evaluate the risks and returns of its investment on a static asset basis.

Accordingly, after due consideration of other appropriate and generally accepted valuation methodologies, the value of the Films has been developed primarily on the basis of the income approach using the discounted cash flow method ("DCF").

The DCF method involves determining a valuation indication for a cash-generating asset, and is particularly well suited to the valuation of intangible assets such as the Films.

The DCF methodology involves the following key steps:

(i)      the determination of cash flow forecasts ("Representative Level Projections"); and

(ii)     the selection of a range of comparative investment-risk-adjusted discount rates to apply against the Representative Level Projections.

For purposes of determining the Representative Level Projections, The Salter Group applied the procedures outlined below.

### 3.1 Representative Level Projections

The following sections portray the applied methodology employed to determine estimates of prospective performance of the Films.  With respect to estimating the prospective performance of the Films, The Salter Group developed forecasts for the years ending December 31, 2010 through 2012.  Based on discussions with Aramid, The Salter Group assumed for purposes herein that the anticipated foreclosure date will be December 8, 2009 ("Foreclosure Date").  Based on our understanding of the distribution prospects for the Films in the near term, The Salter Group assumed cash flows associated with the Films will not begin until March 31, 2010.

In order to develop representative level estimated financial performance for the Films, The Salter Group performed the following steps:

(i)      *Forecast Territories:*  The Salter Group developed forecasts in twelve territories ("Forecast Territories"), in addition to a rest of world territory ("ROW") in order to account for performance not specifically captured by the Forecast Territories.  Performance estimates for ROW were developed based upon license fee information for the Forecast Territories relative to ROW, contained within the Producer Estimates and other information requested from and provided by Aramid.  Further, such Forecast Territories were determined based upon The Salter Group's observations of by-territory performance for similar assets and are displayed in the table below:

-8-

Exhibit 2, Page 12

Stroock & Stroock & Lavan LLP
December 7, 2009

| | Forecast Territories | | |
|---|---|---|---|
| 1 | Australia | 7 | Italy |
| 2 | Benelux | 8 | Japan |
| 3 | North America | 9 | Latin America |
| 4 | Eastern Europe | 10 | Scandinavia |
| 5 | France | 11 | Spain |
| 6 | Germany | 12 | UK |

(ii)  *By-Territory License Fees:*  With respect to determining by-territory license fees for each of the Films, The Salter Group first observed and developed unadjusted license fee ("Unadjusted License Fees") information based upon the following:

    i.  by-territory estimates of gross, all-rights, license fees for each Film, based on the Producer Estimates and other information requested from and provided by Aramid; and

    ii.  The Salter Group's observations of by-territory, all-rights license fees for similar assets given current market conditions.

After consideration of the information detailed above, The Salter Group determined by-territory Unadjusted License Fees, indicative of performance levels achievable for films (i) under a willing buyer/willing seller scenario, (ii) distributed by reputable management and (iii) exclusive of any litigious parties.  In determining such Unadjusted License Fees, The Salter Group estimated aggregate license fees reflecting an outright licensing sale.  Under such forecasts, prospective cash flows arising from the territories thereafter (such as overages, relicenses and so forth) would be generally immaterial.

Subsequently, The Salter Group applied certain adjustments to the Unadjusted License Fees in order to reflect the unique circumstances under which the Films are to be distributed resulting in a level of risk-adjusted license fees ("Risk-Adjusted License Fees").  Refer to section 3.1.1 for a discussion regarding the risk factors considered in developing the Risk-Adjusted License Fees;

(iii)  *By-Territory Availabilities:*  For territories with observed historical sales, as determined based on information requested from and provided by Aramid, The Salter Group assumed that such territories would not be available for current or future licensing.  Further, in identified territories with no indicated historical sales activity as observed in the information requested from and provided by Aramid, The Salter Group assumed that the Films would currently be available for sale.  More detail regarding the treatment of historical sales and the determination of by-territory availabilities is included in the Other Considerations section below;

(iv)  *Determination of Gross Receipts:*  Based upon the by-territory availability and license fee information discussed above, The Salter Group developed Gross Receipts for the period ending December 31, 2010 through 2012.  Such forecasts represent single by-territory, all-rights, licensing events, spread over a three year period to account for any potential delays in the collection of receipts; and

(v)  *Determination of Net Receipts:*  In order to determine Net Receipts from the Films, The Salter Group applied a deduction to Gross Receipts, reflecting a sales fee to a third party distributor/sales agent.

-9-

Stroock & Stroock & Lavan LLP
December 7, 2009

*3.1.1 Licensing Risk Factors/Risk-Adjusted License Fees*

In developing the appropriate Risk-Adjusted License Fees on a prospective basis, The Salter Group considered certain unique risk factors associated with the Films as listed below:

(i) The previous and potential future litigation associated with the Films and associated chain of title complications which may arise from such litigation;

(ii) The current reputation of the Films and their market position;

(iii) Various challenges associated with the current independent film market for exploiting films as observed by The Salter Group;

(iv) The age of the Films and the associated impact on the potential marketability of the Films relative to newer content; and

(v) Challenges associated with developing a distribution strategy for the Films given the unique nature under which the rights to the Films may potentially be acquired.

Based upon the above elements, and further discussions with Aramid, The Salter Group applied certain downward adjustments to the Unadjusted License Fees in order to determine the Risk-Adjusted License Fees to apply on a prospective basis for purposes of this analysis.

*3.1.2 Other Considerations*

As noted above, based on information requested from and provided by Aramid, The Salter Group noted that there were historical sales in certain territories for each Film. The Salter Group further noted that certain historical sales may have been collected as of the Valuation Date based on information requested from and provided by Aramid. Based on discussions with Aramid, for purpose of developing certain valuation indication scenarios portrayed herein, The Salter Group included the amount of historical sales from such territories, net of any collections as of the Valuation Date, as an add-back to value, as reflected in Exhibit A-1 of the support schedules. For purposes of incorporating such amounts, The Salter Group applied certain sensitivities to the uncollected receipts to reflect certain risk factors including, but not limited to:

(i) Previous and potential future litigation associated with the Films and certain ambiguity surrounding the historical distribution agreements;

(ii) The amount of time passed since the historical distribution agreements were developed, which could impact the likelihood that such amounts will be collected in the future; and

(iii) Certain delays and ambiguity surrounding the delivery date of the Films.

With respect to *Love Ranch*, The Salter Group noted that the Producer Estimates did not include forecast performance for the domestic rights associated with this title. Notwithstanding the foregoing, based on discussions with Aramid, The Salter Group developed Domestic forecasts for *Love Ranch*, based upon the information available to us.



Based upon information requested from and provided by Aramid, *Love Ranch* may require additional funding in order to complete production. Notwithstanding the foregoing, for purposes of this analysis, The Salter

-10-

Stroock & Stroock & Lavan LLP
December 7, 2009

Group assumed that both Films were completed and available for current and future licensing as of the Valuation Date with appropriate chain-of-title and other relevant marketing elements in place. That said, for purposes of developing the fair market value indications herein, The Salter Group reflected the deduction of additional potential production costs for *Love Ranch*, as detailed in Exhibit A-1 of the support schedules.

Further, for purposes of developing fair market value indications for *Five Dollars a Day*, The Salter Group noted certain outstanding liabilities associated with the Film, based upon information requested from and provided by Aramid. Such outstanding liabilities were deducted from the net present value of the cash flows associated with the Film and are noted in Exhibit A-1 of the attached support schedules.

*3.1.3 Administrative/Overhead Costs*
For purposes of this analysis, The Salter Group considered certain administration and servicing costs to represent the overhead and administrative costs that a prospective acquirer or financier would incur in exploiting the underlying rights, which include but are not limited to the following items:

   (i)     salaries and bonuses;

   (ii)    benefits;

   (iii)   promotions and marketing;

   (iv)    travel and entertainment; and

   (v)     general office expenses.

The administration and servicing costs also reflect certain profitability objectives of acquirers and financiers of filmed entertainment content.

The Salter Group determined appropriate levels of administration and servicing costs as consistent with our observations of typical market behavior associated with filmed entertainment content. Based on such observations of acquirers and financiers valuing filmed entertainment content, The Salter Group has deducted administration and servicing costs as a percentage of gross cash flow (versus a net basis – net of third party payments and other relevant expenses).

*3.1.4 Calculation of Estimated Taxes*
It is the understanding of The Salter Group that in the case of a foreclosure, a lender would not be obligated to pay state and federal taxes arising from the cash receipts of the Films, as such cash receipts would represent a recovery of principal. As such, The Salter Group has developed fair market value indications for the Films on a pre-tax basis.

*3.1.5 Discount Rates*
A discount rate represents the rate of return an investor requires to justify investment in an entity giving consideration to the risk associated with the investment. Discount rates are determined based on market expectations of the total rate of return and the rate at which capital will be attracted to an entity. One of the most important considerations in determining an appropriate discount rate is the level of risk inherent within an entity. Therefore, due consideration is given to the rates of return available on alternative comparable investments available to a hypothetical buyer.

Numerous factors influence the choice of an appropriate discount rate including those factors external (potentially systematic) and internal (potentially unsystematic) to the potential investment. External factors include, but are not limited to, (i) current general economic conditions, (ii) expectations regarding future economic conditions as of the Valuation Date, (iii) sources of capital available against an asset and (iv)

-11-

Stroock & Stroock & Lavan LLP
December 7, 2009

competitiveness of the markets served by the asset. Internal factors may include, but are not limited to (i) the financial performance of an asset, (ii) the ability to generate positive cash flows and (iii) the ability to deliver products and services to an available market.[2]

For purposes of determining the appropriate range of comparative investment-risk-adjusted discount rates to apply against the Representative Level Projections, The Salter Group applied the Films' weighted average cost of capital ("WACC"). The WACC is calculated by multiplying the (i) the pre tax cost of a hypothetical senior secured loan facility ("Kd") applied against the total value of debt relative to the total value of the enterprise and (ii) the cost of equity ("Ke") applied against the total value of equity relative to the total value of the enterprise. The formula for the pre-tax WACC is found below:

$$WACC = K_d * (d\%) + K_e * (e\%)$$

Where:

| | | |
|---|---|---|
| $K_d$ | = | Pre-tax cost of a senior secured loan facility |
| $K_e$ | = | Cost of Equity |
| d% | = | Value of interest-bearing debt relative to total enterprise value |
| e% | = | Value of equity relative to total enterprise value |

To determine the Ke, The Salter Group considered (i) indications arising from the Capital Asset Pricing Model[3] ("CAPM") and (ii) information from providers of equity capital for similar assets. To determine the Kd, The Salter Group considered (i) information regarding floating debt market rates such as the 6-month LIBOR rate as of the Valuation Date, (ii) information from providers of debt capital for similar assets and (iii) The Salter Group's observations of senior debt levels among similar assets.

The Salter Group considered a weighted average of the Films' Kd applied against d% in the range of 20.0% to 15.0% and the Films' Ke applied against e% in the range of 80.0% to 85.0%.

| Discount Rate Analysis | | |
|---|---|---|
| | Low | High |
| **Costs of Capital** | | |
| Equity | 18.0% -- | 20.0% |
| Debt | 5.0% -- | 6.0% |
| **Capital Structure** | | |
| Equity | 80.0% -- | 85.0% |
| Debt | 20.0% -- | 15.0% |
| Debt to Equity Ratio | 0.25x -- | 0.18x |
| **WACC – Without Taxes** | 15.4% -- | 17.9% |
| **Applied WACC – Without Taxes** | 15.50% -- | 18.00% |

Based upon these analyses, The Salter Group utilized a pre-tax WACC for the Films in the range of 15.5% to 18.0%, as further detailed in Exhibit C-1.

---

2 Gary R. Trugman, Understanding Business Valuation, (American Institute of Certified Public Accounts, 2002), pg 325

3 A model describing the relationship between risk and expected return that is used in the pricing of risky securities based on observed behavior of the capital markets. The CAPM states that the expected return of a security equals the expected return on a risk-free security plus an expected risk premium based on the expected contribution of a security to the market portfolio risk.

Exhibit 2, Page 16

Stroock & Stroock & Lavan LLP
December 7, 2009

### 4. Limiting Factors and Other Assumptions

In accordance with recognized professional ethics, The Salter Group's fee for this engagement is not contingent upon the results set forth in this written Opinion. Further, neither The Salter Group nor any of its employees have a present or intended financial interest in the Films, the Client or Stroock.

All valuation methodologies that estimate the worth of a film as a static asset are predicated on numerous assumptions pertaining to prospective economic and operating conditions. This Opinion is necessarily based on business, general economic, market and other conditions as they exist and can be reasonably evaluated by The Salter Group as of the date hereof. Subsequent events that could affect the conclusions set forth in this Opinion include adverse changes in industry performance or market conditions and changes to the financial condition and results of the Films. The Salter Group does not provide assurances or guarantees on the achievability of any forecasts, projections or other forward-looking matters. Unanticipated events and circumstances may occur and actual results may vary from those assumed. The variations may be material.

Notwithstanding the foregoing, as of the date of this Opinion, the domestic and global financial markets face certain significant challenges and it remains unknown whether the actions of various governments and global banking institutions will be successful in providing greater stability to the financial markets (and if so, what the timing and sequencing of corresponding events would be). While such factors have been considered to a certain degree as part of our analyses, we have assumed that the general economic and other related conditions (including their impact on the Films) will become less uncertain in the near future. As such, our conclusions are qualified by, and remain subject to, the foregoing assumptions and related valuation methodologies.

The conclusions set forth in this Opinion are based on methods and techniques that The Salter Group considered appropriate under the circumstances, and represent the opinion of The Salter Group based upon information requested from and furnished by Aramid and publicly available sources. The Salter Group has relied upon Aramid's (i) representations that the information provided by it, or on its behalf, is accurate and complete in all material requests to the best of its knowledge, and (ii) agreement to notify us if it learns of any material misstatement in, or material omission from, any information previously delivered to The Salter Group. While all public information (including industry and statistical information) was obtained from sources we believe are reliable, The Salter Group makes no representation as to the accuracy or completeness thereof, and we have relied upon such public information and all information requested from and provided by, or on behalf of, Aramid without independent verification.

As The Salter Group is not a law firm or accounting firm, The Salter Group has not reviewed or interpreted certain contracts underlying the rights availabilities, chain-of-title or other distribution structure elements associated with the Films. The Salter Group has relied upon information requested from and provided by Aramid regarding such elements and relevant associated calculations.

The Salter Group is under no obligation to update, revise or reaffirm this Opinion after the date hereof or prior to the closing of any transaction. Further, The Salter Group is not required to render any future services regarding the subject matter of this Opinion, except to the extent expressly set forth in our engagement letter.

This Opinion is intended for the sole use of Stroock and Aramid, solely for the purpose stated, and may not be relied upon by any other person or for any other purpose without The Salter Group's prior written consent.

The opinions set forth in this Opinion are not intended by The Salter Group, and should not be construed, to be investment advice in any manner whatsoever. Furthermore, no opinion, counsel or interpretation is intended in matters that require legal, accounting, tax, insurance or other appropriate professional advice.

-13-

Stroock & Stroock & Lavan LLP
December 7, 2009

Such opinions, counsel or interpretations should be obtained by any recipient of this Opinion from the appropriate professional sources.

Any recipient of this Opinion (other than certain persons affiliated with the Client or Stroock, as specified in our client engagement letter) who has not signed and returned to The Salter Group its customary "Schedule A" access letter agreement is not authorized to review or retain this document. Any such unauthorized person shall be deemed to have acknowledged and agreed to the following additional terms, conditions and limitations: (i) this Opinion was prepared in accordance with instructions provided by, and for the exclusive use of, our client, (ii) this Opinion may not include all procedures deemed necessary or desirable for the purposes of any unauthorized recipient, (iii) neither The Salter Group nor any of its owners, officers or employees owe any duty or responsibility to any unauthorized recipient, and (iv) this Opinion may not be quoted, referenced or distributed, in whole or in part, without the prior written consent of The Salter Group.

This Opinion should be read and analyzed in its entirety.

Stroock & Stroock & Lavan LLP
120709

-14-



The Salter Group

Integrity
Independence
Depth of Experience

# Aramid Entertainment Fund Limited

### Film Analysis Support Schedules

### As of December 7, 2009

**The Salter Group, LLC**
1840 Century Park East, Suite 400
Los Angeles, CA 90067
310-552-3774 tel
310-552-3781 fax
*www.saltergroup.com*

Los Angeles    •    New York    •    Paris    •    Tokyo

CONFIDENTIAL

# Aramid Entertainment Fund Ltd.

**Exhibit A-1:  Valuation Summary**
*(in thousands of USD)*

| | Low | | High | | Reference |
|---|---|---|---|---|---|
| **FMV Including Additional Production Completion Costs - Love Ranch** | | | | | |
| Love Ranch | 2,249.8 | .. | 2,300.5 | | Exhibit A-2 |
| Less: Additional Production Completion Costs (2) | (627.7) | | (627.7) | | |
| **Total FMV Indication - Love Ranch** | **1,622.1** | .. | **1,672.8** | | |
| | | .. | | | |
| | | .. | | | |
| | | | | | |
| Total FMV Indication  Love Ranch | 1,622.1 | .. | 1,672.8 | | |
| Add: Uncollected Historical Sales (4) | 340.6 | | 340.6 | | Exhibit B-1 |
| **Total - Love Ranch** | **1,962.7** | .. | **2,013.4** | | |
| | | .. | | | |

*Footnotes*

(1) It is the understanding of The Salter Group that, in the case of a foreclosure, a lender would not be obligated to pay certain taxes arising from the cash receipts of the Films, as such cash receipts would represent a recovery of principal.  As such, The Salter Group has developed the the valuation indications, detailed above, on a pre-tax basis.

(2) The Salter Group noted that, based upon information requested from and provided by Aramid in the file 'LOVERANCHcrd091117.pdf', *Love Ranch* may potentially require additional funding to complete production.  Notwithstanding the foregoing, for purposes of this analysis, The Salter Group assumed that Films were complete and available for licensing as of the Valuation Date.  That said, the additional production costs associated with the completion of *Love Ranch* are portrayed in the Valuation Summary, above.

(3) ████████████████████████████████████████████████████████████████

(4) Based upon information requested from and provided by Aramid, The Salter Group noted certain uncollected historical sales associated with the Films.  In the case of *Five Dollars a Day*, based upon the file 'Collections Statement no.2 - Five Dollars a Day.pdf', ████████████████.  For purposes of developing Scenario 2 above, The Salter Group incorporated such amounts on a by-Film basis as an add-back to value, but adjusted such amounts downward in order to reflect certain risk factors associated with the collectability the historical sales amounts.

Exhibit 2, Page 20

CONFIDENTIAL

# Aramid Entertainment Fund Ltd.

**Exhibit A-2:  Discounted Cash Flow Analysis - Love Ranch**
*(in thousands of USD)*

| | | 2009 | 2010 | 2011 | 2012 | Total | Reference |
|---|---|---|---|---|---|---|---|
| Gross Receipts | | - | 1,711.7 | 1,369.4 | 171.2 | 3,252.3 | Exhibit B-1 |
| Less: Sales Fee (1) | 12.5% | - | (214.0) | (171.2) | (21.4) | (406.5) | |
| Net Receipts | | - | 1,497.8 | 1,198.2 | 149.8 | 2,845.8 | |
| Less: Admin and OH Fees | 5.0% | - | (85.6) | (68.5) | (8.6) | (162.6) | |
| **Net Receipts After Admin & OH Fees** | | - | 1,412.2 | 1,129.8 | 141.2 | 2,683.2 | |
| Taxes | | - | - | - | - | - | |
| Net After Tax Cash Flow | | - | 1,412.2 | 1,129.8 | 141.2 | 2,683.2 | |
| *Partial Period Adjustment (2)* | 0.07 | *1.0* | *1.0* | *1.0* | *1.0* | | |
| Adjusted Net After Tax Cash Flow | | - | 1,412.2 | 1,129.8 | 141.2 | 2,683.2 | |
| Discount Period | 0.03 | 0.6 | 1.6 | 2.6 | | | |
| Discount Factor | 0.99 | 0.92 | 0.78 | 0.67 | | | |
| **Present Value** | | - | 1,293.5 | 886.4 | 94.9 | 2,274.8 | |

| DCF Assumptions | |
|---|---|
| Discount Rate | 16.75% |
| Tax Rate | 0.0% |

Exhibit C-1

**Sensitivity Analysis: Present Value Indications**



| | | |
|---|---|---|
| Discount Rate | 16.25% | 2,326.8 |
| | 16.50% | 2,300.5 |
| | 16.75% | 2,274.8 |
| | 17.00% | 2,249.8 |
| | 17.25% | 2,225.4 |

| | Low: | | High: |
|---|---|---|---|
| **Valuation Indication Range:** | 2,249.8 | -- | 2,300.5 |

*Footnotes:*

(1) In order to determine Net Receipts from the Films, The Salter Group applied a deduction to Gross Receipts, in order to reflect a typical sales fee to a third party distributor.

(2) Intended to reflect the partial year of 2009 performance through December 31, 2009.

Exhibit 2, Page 21

CONFIDENTIAL

# Aramid Entertainment Fund Ltd.

**Exhibit A-3:  Discounted Cash Flow Analysis - Five Dollars a Day**

*(in thousands of USD)*

| | 2009 | 2010 | 2011 | 2012 | Total | Reference |
|---|---|---|---|---|---|---|

Discount Rate

Exhibit 2, Page 22

CONFIDENTIAL

# Aramid Entertainment Fund Ltd.

**Exhibit B-1: By-Title Forecasts - Love Ranch**

*(in thousands of USD)*

| Territory | Available (1) | Historical Sales (2) | Risk-Adj License Fees (3) | 2009 (5) | 2010 | 2011 | 2012 | Total |
|---|---|---|---|---|---|---|---|---|
| **Gross Forecasts:** | | | | | | | | |
| Australia | 2009 | | 116.1 | - | 61.1 | 48.9 | 6.1 | 116.1 |
| Benelux | 2009 | | 69.7 | - | 36.7 | 29.3 | 3.7 | 69.7 |
| North America (4) | 2009 | | 1,425.0 | - | 750.0 | 600.0 | 75.0 | 1,425.0 |
| Eastern Europe | 2009 | 341.2 | | - | | | | |
| France | 2009 | | 232.3 | - | 122.2 | 97.8 | 12.2 | 232.3 |
| Germany | 2009 | | 232.3 | - | 122.2 | 97.8 | 12.2 | 232.3 |
| Italy | 2009 | | 151.0 | - | 79.5 | 63.6 | 7.9 | 151.0 |
| Japan | 2009 | | 185.8 | - | 97.8 | 78.2 | 9.8 | 185.8 |
| Latin America | 2009 | | 121.9 | - | 64.2 | 51.3 | 6.4 | 121.9 |
| Scandinavia | 2009 | | 69.7 | - | 36.7 | 29.3 | 3.7 | 69.7 |
| Spain | 2009 | | 116.1 | - | 61.1 | 48.9 | 6.1 | 116.1 |
| UK | 2009 | | 290.3 | - | 152.8 | 122.2 | 15.3 | 290.3 |
| ROW | 2009 | | 242.1 | - | 127.4 | 102.0 | 12.7 | 242.1 |
| **Total Gross Receipts** | | 340.0 | 681.2    3,252.3 | - | 1,711.7 | 1,369.4 | 171.2 | 3,252.3 |

**Footnotes:**

(1) Based upon information requested from and provided by Aramid, The Salter Group noted historical sales in Eastern Europe based on the file, "Love Ranch sales and estimates.xls". As such, for purposes of this analysis, The Salter Group assumed that the Film would no longer be available to license in that territory.

(2) Based on information requested from and provided by Aramid, The Salter Group noted certain uncollected sales associated with the Film. As such, for purposes of this analysis, The Salter Group included these uncollected amounts in certain valuation indications herein as an add-back to value, adjusted downward to reflect certain risk factors associated with the collectability of such historical sales amounts.

(3) In developing the Risk-Adjusted License Fees to apply on a prospective basis, The Salter Group considered certain unique risk factors associated with the film, including, but not limited to, the relative age of and previous and possible future litigation surrounding the Film.

(4) Based on information requested from and provided by Aramid, The Salter Group noted no licensing estimates or rights indications associated with North America. Notwithstanding the foregoing, based on discussions with Aramid, The Salter Group assumed that North America is wholly available to license for the Film as of the Valuation Date.

(5) Based on our understanding of the distribution prospects for the Films in the near term, The Salter Group assumed cash flows associated with the Films will not begin until March 31, 2010.

THE SALTER GROUP



# Aramid Entertainment Fund Ltd.

Exhibit B-2: By-Title Forecasts - Five Dollars a Day

*(in thousands of (USD))*

CONFIDENTIAL

THE SALTER GROUP

Page 6 of 7

CONFIDENTIAL

# Aramid Entertainment Fund Ltd.

■ Exhibit C-1: WACC Build Up

|  | Low | | High |
|---|---|---|---|
| **Costs of Capital** |  |  |  |
| Equity | 18.0% | -- | 20.0% |
| Debt | 5.0% | -- | 6.0% |
| **Capital Structure** |  |  |  |
| Equity | 80.0% | -- | 85.0% |
| Debt | 20.0% | -- | 15.0% |
| Debt to Equity Ratio | 0.25x | -- | 0.18x |
| **Tax Rate** | 0.0% | -- | 0.0% |
| **WACC - Without Taxes** | 15.4% | -- | 17.9% |
| **Applied WACC - Without Taxes** | 15.5% | -- | 18.0% |

THE SALTER GROUP

Page 7 of 7

Exhibit 2, Page 25